**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| ANNE J. FOWLER, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No. 6:18-cv-00291-ADA-JCM |
| | ) | |
| SYNCHRONY BANK | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT SYNCHRONY BANK'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO COMPEL ARBITRATION AND DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), Defendant Synchrony Bank ("Synchrony"), requests that this Court (a) compel Plaintiff Anne J. Fowler to submit her claims to arbitration and (b) dismiss the Complaint in this matter pending the outcome of arbitration. In support of its Motion, Synchrony states as follows:

## I.     INTRODUCTION

Plaintiff commenced this action alleging that Synchrony violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. § 392. In its Answer and Affirmative Defenses, Synchrony reserved its right to compel arbitration. [Dkt. 9 at p. 6.] Synchrony moves to compel arbitration of Plaintiff's claims pursuant to the binding arbitration provision contained in the terms and conditions governing Plaintiff's Walmart account (the "Account Agreement").[1] The only issues before the Court on this motion are (i) whether the arbitration provision set forth in the Account Agreement is valid and enforceable and (ii) whether Plaintiff's dispute falls within the

---

[1] Synchrony denies that Plaintiff's claims have any merit whatsoever, and expressly reserves all defenses to Plaintiff's claims.

Arbitration Provision's broad scope. As demonstrated below, the answer to both questions is "yes." By its terms, the Arbitration Provision broadly encompasses any dispute or claim between Plaintiff and Synchrony arising from or relating to Plaintiff's account. The Arbitration Provision must be enforced pursuant to the FAA's liberal policy favoring the enforcement of arbitration agreements, which requires courts to resolve any doubts in favor of arbitration.

Under the FAA, a "written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Federal law strongly favors enforcement of arbitration provisions. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 845 (W.D. Tex. 2016) ("'There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.'" (quoting *Carter v. Countrywide Credit Indus., Inc.,* 362 F.3d 294, 297 (5th Cir. 2004)); *Stanek Tr. of Betty Johnson 2007 Ins. Tr. v. Ameriprise Fin. Servs., Inc.*, 2009 WL 10669497, at *2 (W.D. Tex. Oct. 2, 2009). Under this well-settled authority, courts nationwide specifically have granted motions to compel arbitration by Synchrony (or its predecessors[2] and affiliates) against cardholders like Plaintiff. *Gutierrez v. Wells Fargo Bank, NA*, 2018 WL 2142636 (11th Cir. May 10, 2018) (reversing district court's denial of motion to compel arbitration reasoning in part that the parties' arbitration agreements as an affirmative defense in its answers to Plaintiffs' complaints had the "effect of putting both the Court and Plaintiffs on notice of Wells Fargo's arbitration rights against the unnamed Plaintiffs and its intent to invoke them."); *In re Belton,* 2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015) (reversing the bankruptcy court's decision to deny the motion to compel, and compelling arbitration on a

---

[2]  Synchrony was previously known as GE Capital Retail Bank and GE Money Bank.

contract between the plaintiff and Synchrony's predecessor, GE Capital Retail Bank); *Decker v. Advanced Call Ctr. Techs.*, LLC, No. 1:14-CV-795, 2014 WL 4976771, at *1-3 (W.D. Mich. Oct. 3, 2014) (granting Synchrony's motion to compel arbitration when credit card agreement contained nearly identical arbitration provision); *Caudill v. Cavalry SPV I, LLC*, 2014 WL 4230811, at *1 (E.D. Ky. Aug. 25, 2014) (granting motion to compel arbitration in a GE Capital Retail Bank contract because the plaintiff "entered into a valid arbitration agreement and her claims fall within the scope of that agreement."); *Martin v. Cavalry SPV I, LLC*, No. 13-88-GFVT, 2014 WL 1338702, at *1-10 (E.D. Ky. Mar. 31, 2014) (compelling cardholder to arbitrate claims against subsequent purchaser of charged-off account, where claims related to an account originally issued by GE Capital Retail Bank and subject to card agreement containing arbitration provision); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 472-75 (S.D.N.Y. 2013) (granting motion to compel arbitration of claims filed against credit card issuers and servicers, including GE Capital Consumer Lending, Inc., where, as here, the cardholder agreements contained arbitration provisions and provided that they were governed by Utah law and the FAA); *Clemins v. GE Money Bank*, No. 11-CV-00210, 2012 WL 5868659, at *1-3 (E.D. Wis. Nov. 20, 2012) (granting motion to compel arbitration, finding that plaintiffs' agreements to arbitrate any dispute "that relates in any way to your Account" were enforceable and that plaintiffs' claims relating to their credit card accounts were within the scope of their arbitration agreements); *see also Salyers v. GE Money Bank*, 2011 WL 5078172, at *3 (N.D. Ill. Oct. 25, 2011) (compelling arbitration); *Giles v. GE Money Bank*, 2011 WL 4501099, at *4 (D. Nev. Sept. 27, 2011) (same); *Iwan v. The Gap, Inc.*, 2010 WL 4679536 (Ill. Cir. Ct. Jun. 16, 2010) (same). This Court should do the same here.

## II.    FACTUAL BACKGROUND

Synchrony is a federal savings association that, among other things, issues credit cards to consumers. (*See* Ex. A hereto, Declaration of Martha Koehler ("Koehler Decl."), at ¶ 2.) Synchrony issues Walmart-branded cards, which allow consumers to purchase goods from Walmart. (*Id*. at ¶ 6.) Plaintiff was the accountholder for a Walmart-branded credit card account (the "Walmart Account") issued by Synchrony. (*Id*.) Plaintiff applied for and was approved for the Walmart account on February 10, 2017. (*Id*. at ¶¶ 7-8.)

Plaintiff received a copy of the complete Walmart Agreement for the Walmart Account shortly after her application was approved via mail to the home address she provided on her application. (*Id*. at ¶ 9.) The Walmart Agreement states, in pertinent part, "This is an Agreement between you and Synchrony Bank …. for your credit card account shown above. By opening or using your account, you agree to the terms of the entire Agreement." (*Id.* & Ex. 1 thereto at "Section III".) Plaintiff's Walmart Agreement contained an Arbitration Provision, which states in pertinent part:

**RESOLVING A DISPUTE WITH ARBITRATION**

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

**• What claims are subject to arbitration**

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Walmart Stores, Inc. if it relates to your account, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2)

- 4 -

a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

* * *

- **Governing Law for Arbitration**

This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

- **How to reject this section**

**You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section....**

(Koehler Decl., ¶¶ 13-14 & Ex. 1 thereto (Walmart Agreement)). Plaintiff did not exercise her right under the Agreement to opt out of the arbitration provisions. (*Id*. at ¶ 17.)

Plaintiff made multiple purchases on her Walmart Account. (*Id*. at ¶ 12.) Synchrony has no record of any mail sent to Plaintiff's home address being returned by the U.S. Post Office. (*Id*. at ¶ 12). After the Walmart Agreement was sent to Plaintiff, she continued to make purchases using the Walmart Account, received monthly billing statements, and made payments on the Walmart Account in response to the statements sent to the address that Plaintiff provided in relation to the Walmart Account. (*Id*. at ¶ 10.)

### III.     ARGUMENT

**A.     Plaintiff's Valid Arbitration Agreement Is Governed By the FAA, Which Favors Arbitration.**

The FAA governs the enforceability of the arbitration provisions in the Account Agreements. Where the parties have entered into a valid and binding agreement to arbitrate, the FAA provides that the court "shall on application of one of the parties stay the trial of the action." *See* 9 U.S.C. § 3. The party aggrieved by the failure or refusal of another to arbitrate may move for an order directing that such arbitration proceed in the manner provided for in the agreement to arbitrate. *See* 9 U.S.C. § 4.

As explained by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011), the FAA was enacted in response to "widespread judicial hostility to arbitration agreements" and "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" (Internal citations omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id*.; *see also KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24-25 (2011) (reaffirming the "emphatic federal policy in favor of arbitral dispute resolution" and directing that "[a]greements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts"); *Am. Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (emphasizing that the text of the FAA "reflects an overarching principle that arbitration is a matter of contract").

There is a strong policy in favor of arbitration which requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *Adams v. ACSO of Texas, Inc.*, 2011 WL 2421088, at *2 (W.D. Tex. June 13, 2011) ("In accordance with the FAA, Texas courts 'employ a strong presumption in favor of arbitration.'"

(citing *In re Rubiola,* 334 S.W.3d 220, 225 (Tex. 2011)); *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 914 (N.D. Tex. 2000) ("the Supreme Court has left no doubt that the FAA evinces a federal policy favoring arbitration."); *Bilbo v. Toyota Motor Credit Corp.*, No. CIVA 2:08CV173KS-MTP, 2008 WL 4793804, at *1 (S.D. Miss. Nov. 3, 2008) ("Controlling case law makes it clear that the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

In fact, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original). Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

When determining whether to compel arbitration, the Court must determine: "(1) whether there is a valid agreement to arbitrate the claims, and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Guitar Holding Co., LP v. El Paso Nat. Gas Co.*, 2011 WL 2462233, at *2 (W.D. Tex. June 17, 2011); *Janvey v. Alguire,* 628 F.3d 164, 182 (5th Cir. 2010); *LM Ins. Corp. v. Nat'l Interstate Ins. Co.*, No. 3:12-CV-1225-B, 2012 WL 12937134, at *1 (N.D. Tex. Oct. 31, 2012). "In determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement." *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 547 (W.D. Tex. 2017). Under Utah law, the applicable law in this Agreement, the "essential elements of a contract include 'offer and acceptance,

competent parties, and consideration.'" *Uhrhahn Const. & Design, Inc. v. Hopkins*, 2008 UT

App 41, ¶ 12, 179 P.3d 808, 813 (Utah Ct. App. 2008) (quoting *Golden Key Realty, Inc. v.

Mantas*, 699 P.2d 730, 732 (Utah 1985)). Given the well-settled public policy in favor of

arbitration, the Court should construe the arbitration provision of the Account Agreement

broadly and weigh any doubts in favor of arbitration.

> **B.      The Parties Entered Into a Valid And Enforceable Written Agreement to
>           Arbitrate Plaintiff's Claims.**

The FAA specifically provides that arbitration agreements are enforceable according to

their terms:

> A written provision in any . . . contract evidencing a transaction involving commerce to
> settle by arbitration a controversy thereafter arising out of such contract or transaction, or
> the refusal to perform the whole or any part thereof, or any agreement in writing to
> submit to arbitration an existing controversy arising out of such a contract, transaction, or
> refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2. Plaintiff's Account Agreement, which includes the Arbitration Provision, is

expressly governed by a Utah choice of law provision. (*See* Koehler Decl., ¶ 17 & Ex. 1 thereto.)

While the FAA exclusively governs the enforceability of the Arbitration Provision according to

its terms, Utah law governs the determination of whether a valid agreement to arbitrate exists.

*See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding

whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally .

. . should apply ordinary state-law principles that govern the formation of contracts.").

Here, the Arbitration Provision is a valid agreement to arbitrate under Utah law. Utah law

provides a "card agreement is binding and enforceable" if a "written copy of the terms of the

agreement" is provided, the "agreement provides that any use of the credit offered shall

constitute acceptance of those terms" and, after receiving the agreement, the debtor requests

funds or uses the credit offered. Utah Code § 25-5-4(2)(e).

Here, a contract between Plaintiff and Synchrony was formed. Plaintiff opened the Account and, after receiving a copy of the Account Agreement, made charges on Account, received monthly billing statements, and made payments for a period of time. (Koehler Decl., ¶¶ 8, 11-12.) Accordingly, based on Synchrony's records and Plaintiff's own conduct, the arbitration provision in the Account Agreement is valid and enforceable. *See Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009) (applying Utah Code § 25-5-4(2)(e) and holding that "[t]he combination of [plaintiff's] performance of the contract (paying off her debt to [defendant]) with a presumption that a properly mailed document is received by the addressee, leads this Court to find that a valid arbitration agreement did exist between [plaintiff] and [defendant]") (internal quotation and citation omitted); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 479 (10th Cir. 2006) (compelling arbitration because "[plaintiff's] conduct constituted acceptance of the terms of the arbitration agreement"); *Shetiwy*, 959 F. Supp. 2d at 473 (holding that arbitration provision similar to Synchrony's provision is valid under Utah law); *Clemins*, 2012 WL 5868659, at *2 (same); *Giles*, 2011 WL 4501099, at *3 (same); *Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 856-57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding that arbitration provision was not unconscionable under Utah law), *aff'd*, 531 Fed. App'x 713 (6th Cir. 2013); *Khanna v. Am. Express Co.*, No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *3-4 (S.D.N.Y. Dec. 14, 2011) (arbitration agreement was "binding and enforceable" under Utah law where cardmember agreement provided that use of the card constituted assent to the agreement's terms and that plaintiff used the card); *Wynne v. Am. Express Co.*, No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *7 (E.D. Tex. Sept. 30 2010) (finding arbitration provision enforceable under Utah law "given the statutory approval"); *Miller*

*v. Corinthian Colleges, Inc.*, 769 F. Supp. 2d 1336, 1348-49 (D. Utah 2011) (holding that arbitration provision was not substantively or procedurally unconscionable under Utah law).

Plaintiff agreed to arbitration. Plaintiff now bears the burden of any challenge to the validity of the Arbitration Provision. *Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Plaintiff cannot meet that burden here; thus, the arbitration agreement should be enforced.

### C.    The Scope of the Arbitration Provision Encompasses Plaintiff's Claims in This Action.

Plaintiff's claims against Synchrony directly relate to her Account and thus, fall within the arbitration clause. "In view of the policy favoring arbitration, we ordinarily 'resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration.'" *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) citing *Neal v. Hardee's Food Systems, Inc.,* 918 F.2d 34, 37 (5th Cir. 1990). The Supreme Court dictates that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Encompass Power Servs., Inc. v. Eng'g & Const. Co.*, 224 F. App'x 329, 332 (5th Cir. 2007) (quoting *AT & T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *Brewer v. Fujitsu Am., Inc.*, 2012 WL 12850263, at *1 (W.D. Tex. Oct. 9, 2012). The presumption in favor of arbitrability "is particularly applicable where the [arbitration] clause is . . . broad," *AT&T Techs., Inc.* 475 U.S. at 643, as it is in this case. *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("labelling as 'broad' a clause requiring arbitration of '[a]ny controversy or claim arising out of or relating to this Agreement'") citing *Prima Paint Corp., v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 397–98, 87 S.Ct. 1801, 1802–

03, 18 L.Ed.2d 1270 (1967). Indeed, the Supreme Court has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91.

In the instant case, Plaintiff's claims are arbitrable under the very broad terms of the Arbitration Provision requiring Plaintiff to arbitrate any dispute between the parties. (*See* Koehler Decl., Ex. 1 thereto.) Plaintiff's claims against Synchrony fall within the scope of the Arbitration Provision in the Account Agreement, as those claims relate to the Account and the Account Agreement including, without limitation, Plaintiff's TCPA and TDCA claims. (*See generally*, Compl.)

Plaintiff was the accountholder for the Walmart Account issued by Synchrony. (*See* Koehler Decl., ¶ 6.) Plaintiff was provided with the Account Agreement for the Walmart Account, which contained arbitration provision. (*Id.* at ¶ 9 & Ex. 1 thereto.) Plaintiff did not opt out of the arbitration provision of the Account Agreement and accepted the terms of the Account Agreement by using the Account (*Id.* at ¶¶ 10, 15.) Plaintiff ultimately defaulted on her repayment obligations under the terms of the Account Agreement and, as such, any phone calls allegedly made to Plaintiff arose out of collection of the debts she defaulted on under her Account Agreement.

In her Complaint, Plaintiff alleges that "…Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system..." (Compl. ¶ 20.) Plaintiff further alleges "[a]ny prior consent, if any, was revoked by Plaintiff's verbal revocations."  (*Id.* ¶ 32.) Plaintiff claims that Synchrony violated the TCPA based on this alleged conduct. (*Id.* ¶ 31.)  Plaintiff also claims that Synchrony violated the TDCA as Synchrony's alleged "repeated behavior of systematically calling Plaintiff's phone…was oppressive, harassing and abusive." (*Id.* ¶ 43.)

By its terms, the Arbitration Provision broadly encompasses any dispute or claim between Plaintiff and Synchrony arising from or relating to Plaintiff's account. The arbitration provision of the Agreement provides that, if a demand for arbitration is made, the parties "must arbitrate any dispute or claim ….. if it relates to your account…".. (Koehler Decl., Ex. 1 thereto.) The arbitration provision of all governing Agreement state, in part, that:

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or [the retailer], if it relates to your account, except as noted below.

(*Id.*)

The alleged conduct is clearly related to Plaintiff's default of her obligations under the Account Agreement, and arising out of the alleged collection efforts taken as a result of Plaintiff's default. As such, the allegations are governed by the arbitration provision of the Account Agreement.

The FAA requires "any doubts concerning the scope of arbitrable issues" to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25. Federal law provides that the court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Encompass Power Servs., Inc. v. Eng'g & Const. Co.*, 224 F. App'x 329, 332 (5th Cir. 2007) (quoting *AT&T Techs., Inc.*, 475 U.S. at 650). Moreover, "any doubts or ambiguities concerning 'the scope of the arbitration clause itself [should be] resolved in favor of arbitration.'" *Snow v. Citibank, N.A.*, 2015 WL 799543, at *6 (E.D.N.C. Feb. 25, 2015); citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001). *See also St. Charles v. Sherman & Howard L.L.C.*, No. 14-CV-03416-RM-CBS, 2015 WL 1887758, at *3 (D. Colo. Apr. 24, 2015) quoting *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) ("Where the arbitration

clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."); *Cummings v. FedEx Ground Package Sys., Inc.,* 404 F.3d 1258, 1261 (10th Cir. 2005) (internal quotation and citation omitted). ("[A] collateral issue ... is somehow connected to the main agreement that contains the arbitration clause."); *Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.,* 636 F.3d 562, 569 at 570 (10th Cir. 2010) ("If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them.") (Citations omitted.)

Plaintiff's disputes arise from, and relate to, her default of her obligations under the Account Agreement between the parties. As such, these disputes must be resolved by arbitration pursuant to the terms of the Account Agreement.

### D.      Synchrony's Motion is Timely.

Synchrony's Motion to Compel Arbitration is brought in a timely fashion as Synchrony has neither substantially invoked the judicial process nor will Plaintiff suffer prejudice or detriment by moving this matter into arbitration.

To determine whether a motion to compel arbitration is timely, courts analyze: 1) whether the party seeking arbitration substantially has not invoked the judicial process; and 2) the detriment or prejudice to the other party results. *Burns v. Covenant Health & Rehab of Picayune, LLC*, No. 1:15CV378-HSO-JCG, 2016 WL 660938, at *3 (S.D. Miss. Feb. 18, 2016). Here, Synchrony has not moved for a ruling on the merits, and is bringing this motion only three months after filing its Answer.  Therefore, as set forth more fully below, Synchrony has not substantially invoked the judicial process nor would compelling arbitration prejudice the Plaintiff.

1.      **Synchrony Has Not Substantially Invoked the Judicial Process.**

"The Fifth Circuit has refused to adopt a bright-line rule in determining when a party has waived its right to arbitration; rather, "'[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case.'" *Guitar Holding Co., LP v. El Paso Nat. Gas Co.*, 2011 WL 2462233, at *3 (W.D. Tex. June 17, 2011) citing *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985).  However, "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.,* 575 F.3d 476, 480 (5th Cir. 2009). Arbitration is proper even where both parties have begun discovery. *Tenneco,* 770 F.2d at 420–21 (granting motion to compel arbitration almost eight months into the litigation where both parties participated in discovery reasoning that "this and other courts have allowed …considerably more activity without finding that a party has waived a contractual right to arbitrate.")  *See also In re Mirant Corp.,* 613 F.3d 584, 589 (5th Cir. 2010) ("[to] invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.").

Here, Synchrony filed its Answer less than four months ago. This is far less time into litigation than other courts have previously granted such motions to compel arbitration.  *See Tenneco*, 770 F.2d 416 (reversing order denying motion to compel arbitration where party moved for arbitration eight months into litigation). Additionally, Synchrony has not sought a decision on the merits before moving to compel arbitration. Accordingly, Synchrony has not substantially invoked the litigation process.

**2.     Granting Synchrony's Motion to Compel Arbitration Will Not Result in Detriment or Prejudice to Plaintiff.**

The Fifth Circuit has stated that "'[t]hree factors are particularly relevant to the prejudice determination: (1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate.'" *Petroleum Pipe Ams. Corp.* 575 F.3d at 480. Additional factors used to determine whether the non-moving party will suffer prejudice include determining whether the moving party "took advantage of judicial discovery procedures not available in arbitration." *Burns,* 2016 WL 660938, at *5 citing *Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 569 F. Supp. 1459, 1467 (S.D. Tex. 1983).  *See also Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 848 (S.D. Tex. 2013) ("delay or the requirement that a party pay arbitration fees cannot alone establish prejudice.")

Here, only Plaintiff has issued written discovery requests. Moreover, neither party has taken a deposition in this matter.  Furthermore, the fact discovery deadline is more than three months in the future, while expert discovery deadline is approximately four months away.  [Dkt. 19.] Additionally, neither party has filed a motion for summary judgment.  Finally, Synchrony has not taken advantage of judicial discovery procedures not available in arbitration. As discussed above, Synchrony's motion to compel arbitration is timely, as fact and expert discovery deadlines are months away and no dispositive motions have been filed.

For these reasons, granting Synchrony's motion to compel arbitration will not result in detriment or prejudice to the Plaintiff.

## IV.   CONCLUSION

For the foregoing reasons, Synchrony respectfully requests that the Court (a) grant this Motion, (b) compel Plaintiff to submit his claims to arbitration, and (c) dismiss this action pending the outcome of the arbitration.

Dated:  March 11, 2019                                  Respectfully submitted

                                                        By: */s/ Michael H. Bernick*

                                                        Michael H. Bernick
                                                        Federal ID No. 1439063
                                                        State Bar No. 24078227
                                                        REED SMITH LLP
                                                        811 Main Street, Suite 1700
                                                        Houston, Texas 77002
                                                        Telephone: 713.469.3834
                                                        Telecopier: 713.469.3899
                                                        mbernick@reedsmith.com


                                                        *Counsel for Defendant, Synchrony Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2019 the foregoing document was filed electronically and served on all Parties through the Court's CM/ECF System.

Marwan Daher
SULAIMAN LAW GROUP, LTD.
2500 South Highland Ave., Suite 200
Lombard, Illinois  60148
mdaher@sulaimanlaw.com

*/s/ Michael H. Bernick*
Michael H. Bernick